UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
SHAMAR TURNER,

        Plaintiff,

        - against -

CITY OF NEW YORK, et al.,

        Defendants.
----------------------------------------X

**MEMORANDUM AND ORDER**

18 Civ. 9626 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Shamar Turner brings this action pursuant to 42 U.S.C. § 1983 against the City of New York, the New York City Police Department ("NYPD"), NYPD Detective William Seligson, Bronx Community College ("BCC") Lieutenant Saul Fraguada, BCC Sergeant Pedro Soto, BCC Investigator Angel Irizary, BCC Investigator Alexandra Torres, BCC Corporal Sixto Velasquez, and BCC Public Safety Officers John Does #1-6.[1] Plaintiff asserts claims for false arrest and malicious prosecution in connection with his October 22, 2015 arrest. Before the Court is defendants' motion for summary judgment, which the Court grants in its entirety.[2]

---

[1] As a preliminary matter, plaintiff's claims against defendants NYPD and John Does #1-6 are dismissed. The NYPD is a non-suable entity, Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007), and plaintiff has failed to identify the unnamed defendants despite having had ample time to do so, see Coward v. Town & Vill. of Harrison, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (Plaintiff "simply [could] not continue to maintain a suit against" the John Doe defendant where there was "no indication that plaintiff had made any effort to discover the [defendant's] name") (internal quotation marks omitted).

[2] It has come to the Court's attention that in the case caption as recorded in plaintiff's opposition to defendants' motion for summary judgment ("Opposition"), plaintiff unilaterally removed the NYPD as a named defendant

1

## I. __Background__[3]

On October 22, 2015, at around 6:15 p.m., the BCC Department of Public Safety received a report concerning a dispute on campus. According to the report, a female student had been approached by plaintiff and plaintiff's brother, Uhjani Cruz, who purportedly had cursed and spit on the female student. The report did not allege that plaintiff, then a 26 year-old student at BCC, had any direct involvement in the altercation.

Using the physical descriptions of plaintiff and Mr. Cruz that were provided in the report, Officers Soto, Fraguada, Irizary, Torres, and Velasquez identified and approached the two men on the BCC campus at approximately 6:35 p.m. When Officer Fraguada asked

---

and included as a newly named defendant the City University of New York. Compare ECF No. 4 at 1 (case caption in plaintiff's verified complaint) with ECF No. 39 at 1 (case caption in Opposition).

It should go without saying that a party may not unilaterally amend an established case caption either to remove an improperly named defendant or to include a defendant not previously named. For the avoidance of doubt, the City University of New York is not a party to this action.

[3] The following facts are taken from the Declaration of Nakul Y. Shah in Support of Defendants' Motion for Summary Judgment (ECF No. 35); Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 (ECF No. 36); and Plaintiff's Rule 56.1 Counterstatement (ECF No. 41).

The Court rejects at the outset plaintiff's "objection," repeated throughout plaintiff's Rule 56.1 Counterstatement, that defendants may not rely in its summary judgment motion on the facts alleged in plaintiff's complaint. See ECF No. 41 at 5, 7-10 ("While Plaintiff does not dispute these facts based on the information available to him at present, Plaintiff does object to the submission of statements in Pleadings as 'undisputed facts.' Defendants have not submitted facts in admissible form to prove [their] allegations and therefore may not rely on them in seeking summary judgment.").

Plaintiff's attempt to create triable issues of fact by objecting to the admissibility of facts alleged in his own pleadings is plainly without merit. "It is axiomatic that '[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding'" Morse/Diesel, Inc. v. Fid. & Deposit Co. of Maryland, 763 F. Supp. 28, 32 (S.D.N.Y. 1991) (quoting Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528 (2d Cir. 1985)).

Mr. Cruz for identification, Mr. Cruz, who was not a BCC student and was thus not permitted to be on the BCC campus at that hour, produced plaintiff's student identification card. Upon determining that Mr. Cruz was not plaintiff and was not a BCC student, Officer Fraguada advised Mr. Cruz that he was under arrest for trespass. As the officers approached Mr. Cruz to arrest him, Mr. Cruz removed the backpack that he had been wearing and handed it to plaintiff.

Officer Soto then informed plaintiff that the backpack would need to be searched. While there are differing accounts of what was said next, it is undisputed that, after obtaining the backpack from Mr. Cruz, plaintiff proceeded to walk with the backpack into a nearby building. After a brief conversation between plaintiff and Officers Soto, Velasquez, and Irizary, plaintiff handed the backpack to the officers.[4] Upon searching the backpack and discovering two firearms, defendants placed plaintiff under arrest. Plaintiff was thereafter suspended from BCC.[5]

On November 15, 2015, a Grand Jury in New York State Supreme Court, Bronx County, returned an indictment charging plaintiff

---

[4] Plaintiff disputes that plaintiff "handed" the backpack to the officers "in so far [sic] as it implies the backpack was handed to defendants by plaintiff rather than being seized by defendants." ECF No. 41 at ¶ 9. However, video surveillance footage of the encounter does not support plaintiff's contention that the bag was "seized." See ECF No. 36 at 00:40-00:45. To the contrary, the recorded footage shows plaintiff initiating the removal of the backpack from his person and providing it to the officer.

[5] Plaintiff, a U.S. Army veteran, alleges that he was forced to forfeit approximately $145,000 in veterans benefits as a result of the suspension. ECF No. 1 at ¶¶ 47-48.

with criminal possession of a weapon in the second degree, criminal possession of a weapon on school grounds, criminal possession of a firearm, and criminal possession of a weapon in the fourth degree.[6]  Thereafter, plaintiff moved to suppress the physical evidence discovered during the search of the backpack (*i.e.*, the two firearms) and the noticed statements that he had made to Officer Irizary and Detective Seligson.

Following a hearing on plaintiff's suppression motions, Justice Lester B. Adler of the New York State Supreme Court, County of Bronx issued an Order finding that plaintiff "had a legitimate expectation of privacy with the backpack," ECF No. 35, Ex. G at 5, and that "the prosecution ha[d] not met its burden of proof that [plaintiff] voluntarily consented to the search." Id. at 9.  Thus, the court concluded that the search was unlawful and that the evidence recovered from the search was to be suppressed in plaintiff's criminal trial.  See People v. Turner, 59 Misc. 3d 1229(A) (N.Y. Sup. Ct. 2018).  On September 4, 2018, the Bronx County District Attorney's Office dismissed the charges against plaintiff.  This suit followed.

---

[6] "A person is guilty of criminal possession of a weapon on school grounds when he or she knowingly has in his or her possession a rifle, shotgun, or firearm in or upon a building or grounds, used for educational purposes, of any school, college, or university." N.Y. PEN. LAW § 265.01-a.  "A person is guilty of criminal possession of a weapon in the second degree when: such person possesses any loaded firearm." N.Y. PEN. LAW § 265.03(3).

**A. Procedural History**

Plaintiff filed the complaint in this case on October 19, 2018, asserting causes of action against all defendants for false arrest, malicious prosecution, and failure to intervene, along with related state and municipal law claims against defendants City of New York and the NYPD.[7]  Pursuant to Local Civil Rule 83.10, the parties engaged in limited discovery and thereafter attempted mediation.  Having been informed that the parties' mediation efforts were unsuccessful, this Court held an initial conference on June 11, 2019.

Defendants now move for summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), on all of plaintiff's claims. Defendants maintain that there was probable cause for plaintiff's arrest and criminal prosecution and that plaintiff's false arrest and malicious prosecution claims thus fail as a matter of law.  To the extent the Court concurs with the state court's finding that defendants' search of the backpack was unlawful, defendants maintain that they are entitled to qualified immunity.  Plaintiff,

---

[7] In addition to alleging a cause of action for negligent hiring, training, supervision, discipline, monitoring, and retention, ECF No. 1 at 11, plaintiff's complaint asserted a Monell claim against the City of New York and the NYPD. ECF No. 4 at 10-12.  Plaintiff has since voluntarily withdrawn his Monell and state law claims.  ECF No. 39 at 16.

Because "Monell sets forth the exclusive theory under which an individual may sue a municipality for a violation of federal constitutional rights under color of state law," Corbett v. City of New York, No. 15 Civ. 9214 GHW, 2016 WL 7429447, at *6 (S.D.N.Y. Dec. 22, 2016), plaintiff has effectively withdrawn any claims against the City of New York under § 1983.  The Court thus evaluates the unresolved claims solely as to the individual defendants.

for his part, claims that he was unlawfully stopped and searched; that even after discovering the firearms, defendants lacked probable cause for his arrest and prosecution; and that material questions of fact preclude summary judgment in favor of defendants on the basis of qualified immunity.

For the reasons stated herein, the Court grants defendants' summary judgment motion in full.

## II.  **Legal Standard**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is material when it might affect the outcome of the suit under governing law." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted) (quoting Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005)).  A factual dispute is genuine if a reasonable factfinder could decide in the nonmoving party's favor.  Id.

At summary judgment, the moving party must "make a prima facie showing that it is entitled to summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986).  If the moving party puts forth such a showing, then there is no issue for trial unless the party opposing summary judgment presents "sufficient evidence favoring the nonmoving party for a jury to return a verdict for

that party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

## III. <u>Discussion</u>

### A. False Arrest

A claim for false arrest under 42 U.S.C. § 1983 "derives from [the]    Fourth Amendment right to remain free from    unreasonable seizures, which includes the right to remain free from arrest absent probable cause." <u>Jaegly v. Couch</u>, 439 F.3d 149, 151 (2d Cir. 2006).    "[T]he existence of probable cause is an absolute defense to a false arrest claim."    <u>Id.</u> at 152.

Probable cause to arrest exists when an officer "has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." <u>Jocks v. Tavernier</u>, 316 F.3d 128, 135 (2d Cir. 2003) (quoting <u>Weyant v. Okst</u>, 101 F.3d 845, 853 (2d Cir. 1996)).  "In order to establish probable cause, it is not necessary to make a prima facie showing of criminal activity or to demonstrate that it is more probable than not that a crime has been or is being committed." <u>United States v. Cruz</u>, 834 F.2d 47, 50 (2d Cir. 1987) (internal quotation marks omitted).  Rather, "probable cause requires only the possibility of criminal activity or the possibility that evidence of a crime will be found." <u>United</u>

States v. Zabala, 52 F. Supp. 2d 377, 382 (S.D.N.Y. 1999) (citing Texas v. Brown, 460 U.S. 730 (1983)); see also Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 139 (2d Cir. 2010) (When assessing probable cause to arrest, "the question with which we are presented is not whether [the arrestees] were in fact guilty of violation of the New York statute, but rather whether there was probable cause to believe that they were.").

There is no dispute that the search of the backpack, which was in plaintiff's possession immediately prior to being searched, resulted in the discovery of unregistered firearms. The discovery of the firearms warranted a reasonable belief that plaintiff had committed a crime, thereby providing probable cause for plaintiff's arrest. Because "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest," Weyant, 101 F.3d at 852 (internal quotation marks omitted), the recovery of the firearms defeats plaintiff's false arrest claim.

In an effort to obfuscate this straightforward analysis, plaintiff makes a variety of misapplied arguments that are immaterial to whether defendants had probable cause for plaintiff's arrest. Indeed, the crux of plaintiff's argument against the existence of probable cause -- that defendants lacked sufficient evidence at the time of plaintiff's arrest that

plaintiff either knew about or possessed the contraband[8] -- is not only belied by the factual record but also conflates the standard of proof required to establish probable cause to arrest with that required to sustain a guilty verdict at trial.

With respect to plaintiff's contention that "[t]here were no facts from which the officers could reasonably infer that [plaintiff] knew the bag contained contraband," ECF No. 39 at 7, defendants knew at the time of plaintiff's arrest that the backpack had previously been in the possession of Mr. Cruz and that Mr. Cruz, for unknown reasons, had also been in possession of plaintiff's student identification card. These circumstances, combined with (1) Mr. Cruz's apparent desire to disclaim possession of the backpack upon being arrested; and (2) plaintiff's willingness to take the backpack from Mr. Cruz and carry it into a nearby building, warranted a reasonable belief that there was ongoing criminal behavior between the brothers relating to the contents of the backpack. In light of these facts, plaintiff's contention that defendants had no "basis to tie Plaintiff to

---

[8] Plaintiff alternates between arguing that defendants lacked probable cause because plaintiff was unaware of the contraband, and arguing that defendants lacked probable cause because plaintiff somehow did not "possess" the contraband. See, e.g., ECF No. 39 at 13 ("[T]here was not a sufficient basis for the defendants to conclude that Mr. Turner knowingly possessed the firearms"); id. at 7 ("Under these facts, there was not a sufficient basis to establish Plaintiff's possession of the firearms which were concealed within the bag); id. at 10 ("[T]here was no probable cause for the arrest of plaintiff, as there was not a basis to establish Plaintiff's possession of the contraband"); id. at 16 ("Defendants lack an understanding that they were required to establish plaintiff actually possessed the contraband with which he was charged").

contraband found in the backpack," ECF No. 39 at 14, is simply not credible. To the contrary, the Court thinks it entirely reasonable for defendants to have inferred that the backpack contained contraband that plaintiff and Mr. Cruz shared an interest in concealing.

Further, plaintiff maintains that he was arrested without probable cause because defendants lacked "strong evidence [that plaintiff exercised] dominion and control" over the backpack. ECF No. 39 at 10. After detailing at length the evidentiary showing required to sustain a *conviction* for constructive possession of contraband, id. at 5-7, plaintiff concludes that defendants, having failed to satisfy that "heavy burden," id. at 11, lacked probable cause for his arrest.[9] This argument is flawed not only because it disregards the basic precept that the standard for probable cause is lower than that for conviction, see United States v. Juwa, 508 F.3d 694, 701 (2d Cir. 2007), but also because it would impose "a drastically more rigorous definition of probable cause than the security of our citizens demands." United States v. Delossantos, 536 F.3d 155, 161 (2d Cir. 2008) (internal

---

[9] While ultimately immaterial to the Court's analysis, the Court questions whether the constructive possession cases that plaintiff discusses at length in his Opposition have any relevance to this action. Evidence of constructive possession is necessary where there is a need to demonstrate "dominion or control" over contraband found somewhere *other than* the arrestee's person. Indeed, under New York law, to "possess" means "to have physical possession *or otherwise to exercise dominion or control* over tangible property." N.Y. Penal Law § 10.00(8) (emphasis added). Here, regardless of whether plaintiff knew at the time of his arrest that the backpack contained contraband, plaintiff was in physical (*i.e.*, actual), rather than constructive, possession of the contraband.

quotation marks omitted). To be sure, "once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Finigan v. Marshall, 574 F.3d 57, 63 (2d Cir. 2009) (quoting Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989)). Notwithstanding plaintiff's misguided contentions to the contrary, the issue of whether there was sufficient evidence for a jury to convict plaintiff for having knowingly possessed the firearms is immaterial to the probable cause analysis.[10]

Finally, the conclusion that defendants had probable cause to arrest plaintiff upon discovering the firearms does not depend on the legitimacy of the initial stop and search. See Townes v. City of New York, 176 F.3d 138, 149 (2d Cir. 1999) ("The lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant."); id. at 148 ("The evil of an unreasonable search or seizure is that it

---

[10] In Krause, for example, the Second Circuit found that a suspect's mere possession of stolen property was sufficient for purposes of establishing probable cause to arrest, notwithstanding the suspect's professed ignorance at the time of his arrest as to the fact that the property was stolen. 887 F.2d at 370. The Court reasoned that while evidence that the suspect knew the property was stolen would be necessary to support a conviction for possession of the stolen property, in the context of assessing probable cause to arrest, the officer "was entitled to rely on the implications of the information known to him in assessing whether Krause possessed this knowledge." Id. at 371.

invades privacy, not that it uncovers crime, which is no evil at all."); see also Guzman v. United States, No. 11 Civ. 5834 (JPO), 2013 WL 543343, at *5 (S.D.N.Y. Feb. 14, 2013) ("[E]ven if the officers lacked probable cause to search and seize evidence, once that evidence is seized, it can validly constitute probable cause to arrest.").

In short, notwithstanding the legality of plaintiff's stop and search, defendants had probable cause for plaintiff's arrest upon recovering the firearms from the backpack. Plaintiff's false arrest claim therefore fails as a matter of law, and defendants' motion for summary judgment is granted as to that claim.

### B. Unlawful Search and Seizure[11]

Plaintiff claims that his constitutional rights were violated prior to defendants' discovery of the firearms "by the seizure and search of his person without warrant or probable cause." ECF No. 39 at 14. While plaintiff acknowledges that "damages stemming solely from that initial seizure may be small," id. at 9, he argues that "it is still a violation of a fundamental Constitutional right, and a Jury must be allowed to hear that claim." Id.

---

[11] While plaintiff's complaint does not expressly allege a cause of action for illegal search and seizure, plaintiff's Opposition repeatedly references that claim. See, e.g., ECF No. 39 at 9 ("Plaintiff's claim for illegal search and seizure must be decided by a jury."). The Court will assume for purposes of this Memorandum and Order that plaintiff intended for his false arrest claim to encompass the time period in which plaintiff purports to have been unlawfully seized and searched (i.e., the time period between his initial contact with the defendant officers and the point at which the firearms were discovered).

Defendants maintain that, notwithstanding the conclusion of the state criminal court that defendants' initial stop and search was unlawful, see ECF No. 35, Ex. G, there was at least arguable probable cause for plaintiff's stop and search, thus entitling them to summary judgment on the basis of qualified immunity.

For purposes of this Memorandum and Order, the Court assumes without deciding that the state criminal court was correct in its conclusion that the warrantless search of plaintiff's backpack was unlawful.[12] Accepting that assumption, the relevant question is whether defendants are entitled to qualified immunity for their conduct prior to discovering the firearms.

### Qualified Immunity

"[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." D.C. v. Wesby, 138 S. Ct. 577, 589 (2018). "Police officers generally enjoy a qualified immunity from liability for their discretionary actions if their conduct does not 'violate clearly established rights of which a reasonable person would have known,' or if it is 'objectively reasonable to believe that [their] acts did not violate those clearly established rights.'" Townes, 176 F.3d at 143 (quoting Soares v. State of

---

[12] The Court is not inclined to challenge the findings of the state court following a full evidentiary hearing.

Conn., 8 F.3d 917, 920 (2d Cir. 1993)). "Even in the absence of binding precedent, a right is clearly established if the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (internal quotations marks and citations omitted). Whether a clearly established right existed must be considered "in light of the specific context of the case, not as a broad general proposition." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (internal quotation marks omitted).

Further, "[s]ummary judgment for defendants on grounds of qualified immunity is . . . appropriate only . . . if the evidence is such that, even when it is viewed in the light most favorable to the plaintiff and with all permissible inferences drawn in his favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right." Ford v. McGinnis, 352 F.3d 582, 597 (2d Cir. 2003) (internal quotation marks omitted). "Even on summary judgment, where all facts must be viewed in the light most favorable to the non-moving party, for the purpose of qualified immunity and arguable probable cause, police officers are entitled to draw reasonable inferences from the facts they possess at the time of a seizure based upon their own experiences." Cerrone v. Brown, 246 F.3d 194, 203 (2d Cir. 2001).

Here, viewing the facts preceding the search in the light most favorable to plaintiff, the Court cannot conclude that a reasonable officer would have understood that searching the backpack violated plaintiff's "clearly established right" to privacy as to the contents of the backpack. Notwithstanding its ultimate conclusion that the search was unlawful, the state court acknowledged that "[Officer] Soto had a founded suspicion of criminality that justified his request to search the backpack." ECF No. 35, Ex. G at 6. Specifically:

> When [Officer Soto] spoke to Cruz and Turner, he had already observed the following events: Cruz, wearing the backpack, had walked across campus with Turner; when asked for identification, Cruz presented Turner's identification card and impersonated him; when placed under the arrest for trespassing, Cruz took off the backpack and gave it to Turner, explaining that it belonged to him. Given that, for unexplained reasons, Turner had apparently given Cruz both his student identification card and his backpack, and Cruz gave the bag back to Turner upon his arrest, Soto had a reasonable basis to suspect ongoing criminal behavior by both Cruz and Turner that was connected with the bag.

Id. Because the officers could have inferred from these circumstances that the backpack belonged to Mr. Cruz rather than plaintiff, the officers could reasonably have believed that plaintiff's constitutional rights were not even implicated by the search of the backpack, much less violated.[13] If the backpack in

---

[13] As plaintiff readily concedes elsewhere, "[t]he only information that the officers had about the backpack [at the time of plaintiff's arrest] was that Cruz had been wearing it through the day and continued to wear it as the officers approached." ECF No. 39 at 7; see also ECF No. 42 at 2 ("There is no factual basis in the record from which the officers could have inferred that it was Mr. Turner's bag.").

fact belonged to Mr. Cruz and the transfer of the backpack to plaintiff represented a transfer of Mr. Cruz's property, the search unquestionably would have been justified as a search incident to Mr. Cruz's lawful arrest.[14] The practical realities of law enforcement likewise compel the conclusion that defendants reasonably believed they could lawfully search the bag. To conclude otherwise would communicate to future arrestees that, by transferring concealed contraband to an associate or bystander immediately prior to being arrested, they can prevent law enforcement from discovering contraband that was in their possession moments prior.

Because the Court cannot conclude that a reasonable officer would have understood that stopping and searching plaintiff's backpack violated plaintiff's clearly established right, defendants are entitled to qualified immunity for that conduct.

## C. Malicious Prosecution

"To sustain a § 1983 claim based on malicious prosecution, a plaintiff must demonstrate a seizure amounting to a Fourth Amendment violation and establish the elements of a malicious

---

The Court regards with some skepticism plaintiff's willingness to argue, on the one hand, that the officers had no basis for plaintiff's arrest because there was no evidence linking plaintiff to the backpack, while arguing, on the other hand, that the search of his backpack violated his constitutional right to privacy.

[14] "It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." See United States v. Robinson, 414 U.S. 218, 235 (1973).

prosecution claim under state law." Bertuglia v. City of New York, No. 11 Civ. 2141 (JGK), 133 F. Supp. 3d 608, 625 (S.D.N.Y. 2015), aff'd sub nom. Bertuglia v. Schaffler, 672 F. App'x 96 (2d Cir. 2016). "The elements of a malicious prosecution claim under New York law are '(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor.'" Rohman v. N.Y.C. Transit Auth. (NYCTA), 215 F.3d 208, 215 (2d Cir. 2000) (quoting Posr v. Court Officer Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999)). "Additionally, there must be a post-arraignment seizure for a § 1983 malicious prosecution claim." Jocks, 316 F.3d at 136.

As with false arrest, "the existence of probable cause is a complete defense to a claim of malicious prosecution in New York." Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). Furthermore, "well-established law in this Circuit requires this Court to apply a presumption of probable cause when there is a grand jury indictment." Bertuglia, 133 F. Supp. 3d at 626. That presumption "can only be overcome by evidence that the indictment 'was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith.'" Bermudez v. City of New York, 790 F.3d 368, 377 (2d Cir. 2015) (quoting Marshall v. Sullivan, 105 F.3d 47, 54 (2d Cir. 1996)).

The parties do not dispute that a prosecution was initiated against plaintiff, that the prosecution terminated in plaintiff's favor,[15] and that plaintiff suffered a "post-arraignment seizure" insofar as he was required to attend criminal proceedings. See Jocks, 316 F.3d at 136 (explaining that, in the context of a § 1983 malicious prosecution claim, "attending criminal proceedings" satisfies the requirement that there have been a post-arraignment seizure). Thus, for plaintiff's malicious prosecution claim to survive summary judgment, plaintiff must establish that defendants secured his indictment through bad faith conduct.[16]

---

[15] The parties appear to have assumed that the Bronx County District Attorney's dismissal of the charges against plaintiff reflected a "terminat[ion] in plaintiff's favor" for purposes of the malicious prosecution analysis. Jocks, 316 F.3d at 136. The Second Circuit recently clarified, however, that the favorable termination element of a § 1983 malicious prosecution claim requires "affirmative indications of innocence." Lanning v. City of Glens Falls, 908 F.3d 19, 25 (2d Cir. 2018). Here, the dismissal of charges against plaintiff arguably was not an "affirmative indication of innocence" so much as a consequence of the state court's conclusion that defendants' search was unlawful. See id. (finding that plaintiff's allegation that the charges against him had been dismissed was "consistent with dismissal on any number of procedural or jurisdictional grounds, all of which fail[ed] to affirmatively indicate innocence"). The parties' failure to brief this issue is mooted by the Court's conclusion that plaintiff's malicious prosecution claim fails on an independent basis.

[16] Courts in this Circuit disagree on whether the exclusionary rule applies to the probable cause determination in malicious prosecution claims. Compare Cyrus v. City of New York, 2010 WL 148078, at *4 (E.D.N.Y. Jan. 14, 2010) (concluding that, based on the Second Circuit's holding in Townes that the fruit of the poisonous tree doctrine is inapplicable to § 1983 actions, 176 F.3d at 143, a gun discovered as a result of an unlawful arrest constituted probable cause for purposes of defeating a malicious prosecution claim); with Mazyck v. Johnson, 2009 WL 2707360, at *5 (E.D.N.Y. Aug. 25, 2009) (declining to rule that a gun discovered following an unlawful search constituted probable cause to defeat a malicious prosecution claim on the grounds that defendant officers "had no probable cause to believe that the prosecution would succeed, given that the firearm would be suppressed"). Here, because plaintiff's grand jury indictment creates an independent basis for the existence of probable cause, the Court need not address defendants' argument that the recovery of the firearms defeats plaintiff's malicious prosecution claim.

In an effort to rebut the presumption of probable cause created by the indictment, plaintiff asserts in conclusory fashion only that defendants "relied upon illegally obtained evidence to obtain Plaintiff's indictment," ECF No. 39 at 13, and "presented false evidence regarding the circumstances of how such evidence was obtained [by] falsely alleging that Mr. Turner consented to the search of the backpack." Id. Plaintiff maintains that this conduct "vitiates the presumption created by the indictment." Id. The Court disagrees.

Where, as here, a plaintiff seeks to overcome the presumption of probable cause based on statements made to a grand jury, "[t]he burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the premise that the Grand Jury acts judicially." Rothstein v. Carriere, 373 F.3d 275, 284 (2d Cir. 2004) (internal quotation marks omitted). Having failed to produce any evidence aside from his own conclusory allegations that defendants procured his indictment through misconduct, plaintiff has not met the requisite burden. See Debrosse v. City of New York, 739 F. App'x 48, 50 (2d Cir. 2018) (plaintiff that had offered only "conclusory allegations and unsubstantiated speculation . . . ha[d] not met his burden of producing admissible evidence from which a reasonable juror could infer 'that the

indictment was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith.'") (quoting Bermudez, 790 F.3d at 377 (2d Cir. 2015)). Defendants' motion for summary judgment is thus granted as to plaintiff's malicious prosecution claim.[17]

### D. Failure to Intervene

Plaintiff's claim for failure to intervene is rendered moot by the Court's findings that plaintiff's false arrest and malicious prosecution claims fail as a matter of law and that defendants are, at a minimum, entitled to qualified immunity for plaintiff's allegedly unlawful stop and search.[18]  To be sure, there can be no failure to intervene where there was no underlying constitutional violation for which defendants have been found liable.  See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997) ("A police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known.") (internal quotation marks omitted).

---

[17] Because the existence of probable cause is a "complete defense" to plaintiff's malicious prosecution claim, Savino, 331 F.3d at 72, the Court need not address the argument -- for which plaintiff has offered no support -- that defendants acted with malice.

[18] It is likewise unnecessary to address defendants' argument that the claims against certain defendants should be dismissed for lack of personal involvement.  See ECF No. 37 at 23.

## IV. Conclusion

For the foregoing reasons, the Court grants defendants' motion for summary judgment in its entirety. The Clerk of Court is respectfully directed to enter judgment for defendants, terminate the motion pending at docket entry 34, and close this case.

Dated:    New York, New York
November _18_, 2019

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDG